UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: DELPHI CORPORATION
SECURITIES, DERIVATIVE &                    MDL No. 1725
"ERISA" LITIGATION,                         E.D. Mich. No. 05-1725
_____/            Hon. Gerald E. Rosen

OPINION AND ORDER VACATING THE SOUTHERN DISTRICT
OF FLORIDA COURT'S JULY 20, 2005 ORDER APPOINTING
LEAD PLAINTIFF AND CO-LEAD COUNSEL

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on ___October 17, 2006_____

PRESENT:  Honorable Gerald E. Rosen
                United States District Judge

I.  INTRODUCTION

The above-captioned matter is before the Court pursuant to the December 12,

2005 Transfer Order of the Judicial Panel on Multidistrict Litigation (the "MDL Transfer

Order") which transferred to this Court seven securities fraud and shareholder derivative

actions that were originally filed in the District Court for the Southern District of New

York (the "New York action") and one securities fraud action that was originally filed in

the Southern District of Florida (the "Florida action"), for consolidation with sixteen

securities fraud, ERISA, and shareholders derivative actions which were originally filed

in the Eastern District of Michigan.  At the time of the transfer of the New York and

Florida actions, two motions were pending in the respective transferor courts:  (1) a

1

motion filed by the New York Lead Plaintiffs in the Florida action asking Judge
Ryskamp to vacate his order appointing Sidney Bernstein as lead plaintiff and
Bernstein's attorneys as co-lead plaintiff's counsel and (2) a motion filed by Bernstein in
the New York action asking the court to strike from the Consolidated Class Action
Complaint the allegations and claims concerning Delphi Trust I securities, which is same
the class of securities addressed in the Florida action.  These motions are now pending
before this transferee Court.

Having reviewed and considered the parties' respective motions, briefs and
supporting documents, the Court has determined that oral argument is not necessary.
Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will
be decided on the briefs.  This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

Delphi Corporation, once a completely integrated division of General Motors, was
established as an independent company in 1999.  At the time of its spin-off from GM,
Delphi was the largest supplier of automotive parts in the world on a gross sales and
market capitalization basis.  The new company enjoyed a healthy balance sheet in 1999 as
a result of the stock market riding the telecom and internet high and the economy being
strong at the time.  The company's fiscal success was also attributable to the demand for
GM's (Delphi's primary customer's) high profile SUVs and because its pension plans
were being largely funded by the soaring stock market.

However, in 2000, the stock market collapse precipitated a downturn in the

2

economy.  This, in turn, led to a decline in the production of cars by GM.  The decline in auto production widely impacted the various businesses that support domestic auto manufacturers, including auto parts suppliers.  This market decline has continued ever since.

Despite the collapsing economy, however, Delphi continued to report profits in its SEC Form 10-Q quarterly reports, its annual Form 10-K's, and in press releases to the general public.  Plaintiffs allege that these reports were false and that during the period from April 2000 through March 2005, Delphi, its officers and directors fraudulently misrepresented Delphi's financial results.

In July 2004, the SEC launched an investigation into certain transactions between Delphi and one of its information technology suppliers, EDS.  This SEC investigation precipitated an internal investigation by Delphi's Audit Committee which was begun in October 2004.  In March 2005, the Audit Committee released the preliminary findings of its internal investigation.  These preliminary findings showed widespread accounting irregularities in various Delphi transactions dating back to 1999, requiring the Company to restate its financial statements.  Consequently, on March 4, 2005, Delphi filed a Form 8-K with the SEC acknowledging its accounting irregularities and admitting that these accounting irregularities resulted in the Company overstating cash flow from operations in 2000 by approximately $200 million and in 2001 by $61 million.  Delphi also announced that its Chief Financial Officer, Alan Dawes, had resigned.

On March 5, 2005, Delphi's debt rating was downgraded to junk status.  The revelation that Delphi inflated its earnings and operating cash flow since 1999 also sent

Delphi's stock plummeting – Delphi's stock price fell from $6.48 on March 3 to $5.15 on March 7 – a drop of over 20% in two trading days.  Then, on March 30, 2005, the FBI announced that it was initiating a criminal investigation into Delphi's accounting.

The foregoing events precipitated the filing of the various securities fraud, ERISA and shareholders' derivative complaints comprising the instant MDL action.  The instant motions concern the securities fraud actions.

The New York Securities Fraud Action

The Consolidated Complaint filed in the New York securities fraud action contains 16 separate counts all based on allegations of fraud stemming from the misrepresentations in Delphi's Form 10-K's, quarterly 10-Q's, and press releases and also from misrepresentations in various stock and bond offering materials.  Specifically, Plaintiffs allege claims of violations of Section 10(b) and Rule 10b-5 of the Exchange Act (Counts I, III, and IV) and Section 20(a) of the Exchange Act (Count II) against Delphi, its Officers, its Directors, the Audit Committee Members, three outside entities -- BBK, Setech and Bank One -- and the accounting firm of Deloitte & Touche, all based on the 10-K and 10-Q filings.

The Consolidated Complaint further alleges violations of Sections 11, 12 and 15 of the Securities Act (Counts V-XVI) against the Company, Delphi Trust I and Delphi Trust II, the Officers, Directors and Underwriters based on the June 1, 2001 and July 25, 2003 stock offerings and the October 21, 2003 Delphi Trust I and November 11, 2003 Delphi Trust II Preferred Securities offerings.

4

The Florida Securities Fraud Action

The Florida securities fraud action alleges claims against Delphi Trust I, the officers and directors of the Company and the underwriters of the Delphi Trust I October 21, 2003 Preferred Securities offering.  As with the New York action, the Florida complaint is predicated upon the misrepresentations in the various 10-K and 10-Q reports as well as the Registration Statement and Prospectus concerning the October 21, 2003 Delphi Trust I offering.  Plaintiff Bernstein alleges violations of Sections 11 and 15 of the Securities Act, i.e., the same claims alleged in Counts XI and XIII in the Consolidated Complaint in the New York action.

## II.  PROCEDURAL HISTORY

The first Delphi securities fraud class action complaint, *Cox v. Delphi Corporation*, S.D.N.Y. No. 05-02637, was filed in Southern District of New York on March 7, 2005.[1]  On that same date, Cox's attorneys, Schiffrin & Barroway LLP, published on *Market Wire* a statutory Notice of the filing of "a class action lawsuit filed in the United States District Court for the Southern District of New York *on behalf of all securities purchasers* of Delphi Corporation. . . from January 17, 2001 through March 3, 2005, inclusive." [*See* 7/25/05 Declaration of Sean Handler, Ex. A (emphasis added).] The Notice further advised,

_____

[1]  Six more securities fraud complaints were filed in the Southern District of New York on March 8, 10, 15, 29, April 1 and May 6, 2005.  These complaints were subsequently consolidated with the *Cox* case and the consolidated action was re-titled "*In re Delphi Corp. Securities Litigation*."

If you are a member of the class described above, you may, *not later than May 6, 2005* move the Court to serve as lead plaintiff of the class, if you so choose. . . .  You may retain Schiffrin & Barroway, or other counsel of your choice, to serve as your counsel in this action."

*Id.* (Emphasis added.)

The day after the New York action was filed, a separate class action securities fraud complaint was filed by different counsel in the Eastern District of Michigan, *Priest v. Delphi Corp., et al.*, No. 05-CV-70907-DT, and statutory Notice of this action was published on the *Business Wire*.  Similar to the *Cox* Notice, the *Priest* Notice advised of the filing of "a class action lawsuit *on behalf of purchasers of the securities of Delphi Corporation* between April 12, 2000 and March 3, 2005, inclusive." [*See* E.D. Mich. Document No. 17, Declaration of Patrick Dahlstrom, Ex. A (emphasis added).] The *Priest* Notice further advised,

If you bought the securities of Delphi between April 12, 2000 and March 3, 2005 and sustained damages, you may, *no later than May 6, 2005*, request that the Court appoint you as lead plaintiff. . . .  You may retain Milberg Weiss Bershad & Schulman LLP, or other counsel of your choice to serve as your counsel in this action.

*Id.*  (Emphasis added.)

In accordance with the *Cox* and *Priest* Notices, on May 6, 2005, 18 parties filed motions in the New York action for appointment as lead plaintiffs and for approval of their respective attorneys as lead counsel and 17 parties filed such motions in the Eastern

6

District of Michigan.[2]

On April 11, 2005, after the New York (and the Michigan) actions were pending for more than a month, Sidney Bernstein filed his class action lawsuit in the District Court for the Southern District of Florida purportedly on behalf of only Delphi Trust I purchasers who purchased Delphi Trust I preferred securities from October 21, 2003 through March 3, 2005.  As indicated above, Bernstein's Florida lawsuit named as defendants Delphi Trust I, the banks that underwrote the Delphi Trust I preferred securities, and essentially the same Delphi officers and directors as in the *Cox* action, but alleges only violations of Sections 11 and 15 of the Securities Act of 1933.  *See Bernstein v. Delphi Trust I, et al.*, S.D. Fla. No. 05-80307.  The claims in Bernstein's complaint, however, are premised on the same underlying facts as the New York action.

Two weeks after filing the *Bernstein* action, on April 22, 2005, counsel for Bernstein published a notice of the lawsuit in the *Investor's Business Daily*.  That notice advised of the filing of a class action lawsuit "on behalf of all persons who purchased Trust Preferred Securities Certificates of Delphi Trust I. . . between October 23, 2003 and March 3, 2004, inclusive." [*See* 8/10/05 Declaration of Howard T. Longman, Ex. B.]

---

[2]  Anticipating transfer of all of the related actions in one of the two Districts to the other District, a number of these parties filed motions for appointment as lead plaintiff and for lead counsel approval simultaneously in the Southern District of New York and the Eastern District of Michigan.  One of the movants in the Michigan action, Spectrum Asset Management, Inc., was a Delphi Trust I purchaser that claimed losses of nearly $14 million.

The Notice further advised,

> If you acquired the Certificates between October 20, 2003 and March 3, 2004, inclusive, you may, no later than June 21st, 2005, request the Court appoint you as lead plaintiff. . . . You may retain Stull, Stull & Brody, or other counsel of your choice to serve as your counsel in this action."

*Id.*

Only Bernstein moved the Court to be appointed as lead plaintiff; no other interested parties sought to participate in the Florida action either before or after June 21, 2005. In his motion filed in the Florida court on June 20, 2005, Bernstein asserted that he suffered losses in the amount of $5,226.00 as a result of the defendants' violations of the securities laws. [*See* 6/20/05 Motion for Appointment, p. 2.] Bernstein's Motion further stated that

> Plaintiff's attorneys know of no other member or members of the putative Class who has or have moved for appointment as Lead Plaintiff or even filed a complaint on behalf of the putative Class.

*Id.*

In a footnote, however, Bernstein acknowledged his awareness of the March 7 and 8, 2005 filing, and continued pendency, of the actions in the Southern District of New York and the Eastern District of Michigan. *Id.* at p. 10 n. 4. He further acknowledged that the New York and Michigan actions were "based upon the same or similar underlying occurrences at Delphi Corporation as the instant [Florida] action." *Id.* But, he advised the Florida court [erroneously] that the New York and Michigan actions were brought only "on behalf of *purchasers of the common shares* of Delphi Corporation," and

8

that his action was "the only action brought on behalf of purchasers of [Preferred Securities] Certificates of Delphi Trust I." *Id.* (Emphasis added.)

Bernstein's motion for appointment as lead counsel being unopposed, on July 20, 2005, Judge Ryskamp entered Bernstein's proposed "Order Appointing Lead Plaintiff and Co-Lead and Liaison Counsel," appointing Bernstein as Lead Plaintiff, and his choice of Stull, Stull & Brody and Goldhammer & Graifman as Co-Lead Counsel, and Bernstein's Florida attorney, Abraham Rappaport, as Liaison Counsel.

The New York plaintiffs promptly moved to intervene in the Florida action on July 27, 2006, and requested that Judge Ryskamp vacate the order appointing lead plaintiff and lead counsel. The motion was fully briefed by the parties but Judge Ryskamp never ruled on the matter. Instead, on August 29, 2005, upon being notified of the filing of a motion to transfer with the Judicial Panel on Multidistrict Litigation, the Judge entered an Order staying the action pending transfer to multidistrict litigation proceedings.

Meanwhile, in the New York and Michigan actions, the interested parties reached an agreement as to the appointment of Lead Plaintiffs and Lead Counsel. First, the parties in the Michigan securities cases agreed to voluntarily dismiss their complaints and to participate as class members in the New York action, instead. Then, on June 27, 2005, Judge Buchwald entered a stipulated Order appointing the Teachers' Retirement System of Oklahoma ("OTRS"), the Public Employees Retirement System of Mississippi ("Mississippi PERS"), Stichting Pensioenfonds ABP ("ABP"), and Raiffeisen Kapitalanlage-Gesellschaft, m.b.H. ("Raiffeisen") as Co-Lead Plaintiffs and their

9

respective attorneys, Nix, Patterson & Roach, L.L.P., Bernstein, Litowitz, LLP, Berger & Grossmann, Grant & Eisenhofer, P.A., and Schiffrin & Barroway as Co-Lead Counsel for the Class.[3]

These agreements having been reached, on September 23, 2005, Judge Buchwald entered an Order directing the filing of a Consolidated Class Action Complaint.

A Consolidated Class Action Complaint was filed in accordance with Judge Buchwald's Order on September 30, 2005.  The Consolidated Class Action Complaint added Delphi Trust I and Delphi Trust II as defendants and included separate counts alleging violations of the Securities Act of 1933.[4]

Three months later, on December 12, 2005, Sidney Bernstein, through counsel, moved to intervene in the New York action for the purpose of obtaining an order to strike the allegations concerning Delphi Trust I from the Consolidated Class Action Complaint. This motion was never acted upon because it was on that same date, December 12, 2005, that the Judicial Panel on Multidistrict Litigation issued its order transferring the action to this Court.

In his Motion to Intervene, however, Bernstein admits that the relief he seeks by

---

[3]  This was the same agreement reached in the Michigan cases although no order was ever entered because the cases were voluntarily dismissed and the Michigan litigants joined the New York action.

[4]  As originally filed, neither the *Cox* action nor any of the companion cases specifically named Delphi Trust I or II as a party-defendant, nor did any of the complaints allege violation of the Securities Act of 1933 as a theory of recovery.

way of his New York filing is wholly contingent upon this Court's decision with regard to the New York plaintiffs' motion to vacate the Florida court's lead plaintiff order:

> After the MDL Panel rules on the pending MDL motions, the Cox Lead Plaintiffs' motion to intervene and to vacate the order issued by the Florida District Court will be decided by the transferee Court designated by the MDL panel. If the Cox Lead Plaintiffs are successful in vacating the Delphi Trust I Lead Plaintiff Order, they can proceed to include the Delphi Trust I Class Action claims in their litigation.

[*See* 12/12/05 Motion of Delphi Trust I Lead Plaintiff to Intervene, p. 16.]

Therefore, resolution of the Florida Motion to Vacate will resolve both of the pending motions.

III.  DISCUSSION

A.   THIS COURT IS AUTHORIZED TO VACATE THE ORDERS OF A TRANSFEROR COURT

It is well-established that after a multidistrict transfer becomes effective, "[t]he transferee judge may vacate or modify any order of a transferor court."  *See* Manual for Complex Litigation, Fourth ("MCL"), § 20.132, pp. 221-222 (2004).  *See also In re Upjohn Co.Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 117 (6th Cir. 1981). Until altered, however, orders of the transferor court remain in effect.  MCL § 20.132, *supra*; *In re Master Key Antitrust Litig.*, 320 F. Supp. 1404, 1406 (J.P.M.L. 1971). Accordingly, this Court has the authority to vacate the order entered by the District Court for the Southern District of Florida appointing lead plaintiff and lead counsel in the *Bernstein* matter.

B.   BERNSTEIN DOES NOT SUFFICIENTLY MEET THE REQUIREMENTS OF

11

<u>THE PSLRA TO SERVE AS A LEAD PLAINTIFF IN THIS MATTER</u>

The Private Securities Litigation Reform Act ("PSLRA") sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class action lawsuits. *See* 15 U.S.C. § 78u-4(a)(3). According to the PSLRA, the court shall appoint as lead plaintiff the movant that the court determines to be most capable or adequately representing the interests of the putative class members. In determining who is the "most adequate plaintiff," the statute provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that --
>
> > (aa) has either filed a complaint or made a motion in response to a notice. . .;
> >
> > (bb) in the determination of the court, <u>has the largest financial interest</u> in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the [adequacy and typicality] requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added). *See also, Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 16-17 (D.D.C. 2006).

The question presented here is whether Bernstein satisfies the financial interest requirement.

The PSLRA's presumption that the most adequate plaintiff is the one with the largest financial interest reflects Congress's desire to curtail lawyer-driven securities class

actions.  *See* H.R. Conf. Rep. No. 104-369 at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N.

730.  To achieve this goal, Congress sought to attract lead plaintiffs with a significant

financial stake in the litigation on the assumption that they would be more likely to play

an active role in directing and overseeing litigation.  *See Barnet v. Elan*, 236 F.R.D. 158,

161 (S.D.N.Y. 2005).

Furthermore, Congress explicitly stated that it hoped that by selecting the plaintiff

with the greatest financial loss, the PSLRA would thereby "increase the likelihood that

institutional investors will serve as lead plaintiffs."  H.R. Conf. Rep. No. 104-369 at 34,

1995 U.S.C.C.A.N. 730, 733.  In Congress's view, institutional investors should serve as

lead plaintiffs where possible, since they are most likely to have the most at stake in the

case and be the most sophisticated and competent litigants. *In re XM Satellite Radio*,

*supra*, 237 F.R.D. at 17; *see also In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157

(S.D.N.Y. 1997) ("[a]ppointing lead plaintiff on the basis of financial interest, rather than

on a 'first come, first serve' basis, was intended to ensure that institutional plaintiffs with

expertise in the securities market and real financial interests in the integrity of the market

would control the litigation, not lawyers"); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp.

2d 1061, 1066 (C.D. Cal. 1999) ("As Congress and academics have noted, institutional

investors have incentives to monitor their suits closely because of the substantial stakes in

the stock at issue, thereby eliminating frivolous tactics and settlements that inflate

attorneys' fees.)

Here, there is no question that Mr. Bernstein comes no where close to having the

largest financial interest in the action.  His $5,226.00 loss is far from the losses of the four

co-lead institutional plaintiffs appointed in the New York action who collectively lost

over $34 million from the same fraudulent activities alleged in Bernstein's complaint.

Bernstein does not dispute this.  Rather, taken in the best possible light now that

his complaint has become part of the multidistrict proceeding, his position is that he is the

most adequate plaintiff to represent the sub-class of Delphi Trust I preferred security

purchasers bringing Section 11 and 15 claims because the co-lead plaintiffs appointed by

the New York court only suffered common stock losses.  Therefore, he argues that he

should be afforded Lead-Plaintiff status to represent Delphi Trust I claimants.

However, courts that have addressed this issue have held otherwise.  For example,

in *In re Northwestern Corp. Sec. Litig*., 299 F. Supp. 2d 997 (D.S.D. 2003), a

consolidated class action securities fraud case, a purchaser of trust preferred securities in

business trusts affiliated with Northwestern sought to be appointed as a separate lead

plaintiff on behalf of only the preferred securities purchasers arguing, as Bernstein does in

this case, that it was the most adequate plaintiff to represent the preferred securities

purchasers because it was the only plaintiff with claims under the Securities Act.  The

court rejected the argument noting:

> It is not a requirement that a lead plaintiff under the PLSRA suffer losses on
> each type of security that may be at issue in the class action.  "The purpose
> of the lead plaintiff section. . . was never to do away with the notion of class
> representatives or named plaintiffs in securities class actions.  Rather, the
> purpose was to ensure that securities litigation was investor-driven, as
> opposed to lawyer-driven." [Citations omitted.] Thus, the three members of
> the Carpenters Group appointed as Lead Plaintiff need not have suffered a

14

> loss on each type of security at issue to serve as the Lead Plaintiff in this
> litigation.

*Id.* at 1007; *see also The Constance Sczesny Trust v. KMPG LLP*, 223 F.R.D. 319, 325

(S.D.N.Y. 2004) (where the claims of both shareholders and option holders were

predicated on the same misrepresentations in Polaroid's public securities filings, the

interests of option investors and shareholders were held not to be sufficiently

differentiated so as to require the appointment of a "niche" lead plaintiff); *In re Enron*

*Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (rejecting arguments by preferred

stockholders, bondholders and other securities holders that separate classes and separate

lead counsel were required for each type of security noting that for purposes of efficiency

and fairness to all litigants, "the litigation should proceed as a unified class with a strong

Lead Plaintiff, at least until the time for class certification"); *Aronson v. McKesson*

*HBOC, Inc.*, 79 F. Supp. 2d 1146, 1151 (N.D. Cal. 1999) (noting that there is a "statutory

presumption that one lead plaintiff can vigorously pursue all available causes of action

against all possible defendants under all available theories," the court rejected arguments

by competing lead plaintiffs who argued that they, unlike presumptive lead candidates,

possessed unique statutory claims); *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 480

(D.N.J. 1988) (emphasizing that "what matters here is that the claims of every member or

constituent group of the putative class arise from the same false or allegedly fraudulent

representations of [the defendants]" and, therefore, refusing to appoint separate lead

plaintiffs and counsel for separate groups of investors).

15

By application of the foregoing authorities, the Court finds that separate lead plaintiff status and counsel for a separate class of Delphi Trust I claimants is unnecessary in this case.  As indicated, the institutional Lead Plaintiffs and counsel appointed and approved by Judge Buchwald are by far "the most adequate plaintiffs" in this matter. Further, segregating out a sub-class of Delphi Trust I preferred securities purchasers is wholly unnecessary here where the claims of both the common stock and preferred securities purchasers are all predicated upon the same allegedly false and fraudulent representations and actions of Delphi Corporation and its officers and directors.

Moreover, as the institutional Lead Plaintiffs acknowledge, they are statutorily obligated to vigorously pursue the claims of *all* claimants.  They have already taken action in this regard by filing a consolidated class action complaint which incorporates the claims of common stock purchasers and the claims of both Delphi Trust I and Delphi Trust I preferred securities purchasers.  The Court notes that in this respect the case which Plaintiff Bernstein relies heavily upon, *In re UnumProvident*, E.D. Tenn. No. 03-1552 (11/6/03 unpublished order), is markedly distiguishable.  In that case, the court sanctioned the maintenance of a separate class action for the purchasers of trust securities because the lead plaintiff appointed to represent the purchasers of Unum common stock had elected to file a consolidated amended complaint that failed to bring claims on behalf of putative class members who had purchased Unum Trust securities.

Furthermore, allowing the maintenance of a separate class with Plaintiff Bernstein as the lead plaintiff and his selection of two firms to act as co-lead counsel for the

16

subclass would unnecessarily increase the costs of litigation of this matter.  Separate class/separate counsel would present a substantial risk of duplicative services and disrupt the coordination of efforts, not to mention increasing litigation time and expense, which was among the goals of Congress in enacting the PSLRA.  These are all issues that Judge Ryskamp was not presented with the time of his approval and entry of Bernstein's proposed order appointing him lead plaintiff and his selection of Stull, Stull & Brody and Goldhammer & Graifman as co-lead counsel.

In sum, under the circumstances presented here, the Court finds that the appointment of a lead plaintiff with separate co-lead counsel to represent a subclass of Delphi Trust I preferred securities purchasers is not warranted.  Therefore, the Court will VACATE the Order entered by the District Court for the Southern District of Florida on July 20, 2005.  The vacating of this order does not preclude Mr. Bernstein from retaining the counsel of his choice or from participating in this matter as a member of the plaintiff class.  It only precludes Bernstein's participation as a "lead" plaintiff.

<u>CONCLUSION</u>

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that the July 20, 2005 Order of the District Court for the Southern District of Florida appointing Sidney Bernstein lead plaintiff and approving Bernstein's selection of Stull, Stull & Brody and Goldhammer & Graifman as co-lead counsel and Abraham Rappaport as liaison counsel is VACATED.

The Court being satisfied with the adequacy of the OTRS, the Mississippi PERS,

17

ABP and Raiffensen to serve as co-lead plaintiffs and being further satisfied with the adequacy of their respective attorneys to serve as co-lead counsel for the class,

IT IS FURTHER ORDERED that the June 27, 2005 Order entered by the District Court for the Southern District of New York  appointing the OTRS, the Mississippi PERS, ABP and Raiffensen as co-lead plaintiffs and their respective attorneys as co-lead counsel for the class is hereby ratified by this Court.

SO ORDERED.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  October 17, 2006




I hereby certify that a copy of the foregoing document was served upon counsel of record on October 17, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager