UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: DELPHI CORPORATION
SECURITIES, DERIVATIVE &
"ERISA" LITIGATION,

MDL No. 1725

Master Case No. 05-md-1725
Hon. Gerald E. Rosen

This Document Relates to:
05-70882; 05-70940; 05-71030;
05-71200; 05-71249; 05-71291;
05-71339; 05-71396; 05-71397;
05-71398; 05-71437; 05-71508;
05-71620; 05-71897; 05-72198

_____/

OPINION AND ORDER REGARDING
STATE STREET BANK'S MOTION FOR REIMBURSEMENT OF
DEFENSE COSTS FROM THE NET SETTLEMENT FUND

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____January 29, 2010_____

PRESENT:   Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

On March 18, 2009, the Court granted summary judgment in favor of Defendant

State Street Bank and Trust Company ("State Street") on all claims asserted against it in

Plaintiffs' Consolidated Class Action Complaint.  This matter is now before the Court on

State Street's motion for reimbursement of defense costs.  Plaintiffs have responded and

State Street has replied. Having reviewed the parties' written submissions, as well as the

remainder of the record, the Court finds that the pertinent facts and legal issues are

1

sufficiently presented in these materials, and that oral argument would not assist in the

resolution of this matter. Accordingly, the Court will decide the motion "on the briefs."

See Eastern District of Michigan Local Rule 7.1(e)(2).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

State Street Bank and Trust Company's Motion for Reimbursement of Defense

Costs is the final chapter in this multi-district litigation action arising out of the decline

and ultimate bankruptcy of Delphi Corporation.  In the summer of 2007, following an

extensive mediation effort before the Honorable Layn Phillips, former United States

District Judge acting as a Special Master, the ERISA Plaintiffs agreed to settle their

claims against all of the defendants except State Street.[1]  On August 31, 2007, Plaintiffs

moved for preliminary approval of a stipulated settlement.  One critical part of the

settlement was the need to eliminate direct claims against Delphi, as well as cross-claims

and other secondary claims against Delphi and related entities concerning the ERISA and

securities class actions, to enhance the company's chances at emerging smoothly from

bankruptcy.  To that end, the Stipulation provided a bar order prohibiting all "Barred

Persons," which included State Street, from pursuing any claims against Delphi and any

of the other "Released Parties," which included among others, General Motors

Investment Management Company ("GMIMCo") "whether for indemnification and

---

[1]  Although State Street did not participate in the mediation sessions, it was in contact with Judge Phillips and was generally informed of the progress made.  *See* Declaration of Wilber Boies, lead counsel for State Street, ¶ 2.

2

contribution" or otherwise.  *See* Stipulation at Dkt. # 228-3.  The Stipulation further

provided for a judgment reduction mechanism in the event of a future judgment against a

Barred Person and also proposed a mechanism by which the Court, in its discretion, could

(1) amend the judgment reduction mechanism if "applicable law requires" that it be

calculated differently and (2) reserve from the Net Settlement Fund an "appropriate"

amount that would be available to "compensate any Barred Person for any claim for

reimbursement of and/or indemnification for legal fees and/or expenses related to any

Barred Claims."  *Id.* ¶ 6

On September 5, 2007, the Court preliminarily approved the settlement and set a

Fairness Hearing for November 13, 2007 to address the parties' request for final approval

of the settlement and for dismissal, with prejudice, of all claims against the Settling

Defendants pursuant to the Stipulation.  [*See* Order at Dkt. # 231.]

State Street objected to the settlement, and on October 5, 2007, filed Objections

arguing that the Stipulation was unfair because

- the proposed judgment reduction formula would not credit State Street for the settling defendants' full proportionate share of fault.  Rather the credit would be reduced to reflect the settling defendants' ability to pay at the time judgment enters; and

- the judgment reduction formula provides absolutely no consideration for State Street's extinguished indemnification rights in the event that State Street prevails on the merits and there is no money judgment against State Street to "reduce."

*See* State Street's Objections [Dkt. # 234, p. 2.]

3

To its Objections, State Street attached a copy of the Delphi Automotive Systems Savings Trust (the "Master Trust") as an exhibit and highlighted four key provisions of the Master Trust that State Street claimed provided it with indemnification rights which the Bar Order would extinguish.

The first of these Master Trust provisions provided that GMIMCo would broadly indemnify State Street for all claims arising out of certain wrongful conduct by GMIMCo and also all claims arising out of State Street's actions in accordance with directions from GMIMCo:

> GMIMCo agrees to defend, indemnify, and hold the Trustee harmless from and against all claims, demands, damages, taxes and other liabilities which the trustee may incur to the extent arising from GMIMCo's breach of this Agreement, or the negligence, bad faith, recklessness, willful misconduct or nonfeasance of GMIMCo.  Subject to the following provisions of this Section [14].9,[2] ***GMIMCo agrees to defend, indemnify and hold each Trustee harmless from and against all claims, demands, damages, taxes and other liabilities which the Trustee may incur as a result of any act or omission in accordance with direction of GMIMCo or any Investment Manager***, but only to the extent such claims, demands, damages, taxes and other liabilities do not arise from the negligence, bad faith, recklessness, willful misconduct, misfeasance or nonfeasance of the Trustee or any agent appointed by the Trustee (which for purposes of this paragraph only shall not include any non-domestic depositories, except as otherwise provided in paragraphs (d) and (e) below), or any of their respective employees or agents.

Master Trust, § 14.9(a) (emphasis added).

---

[2]  The various Sections in the Master Trust are numbered sequentially.  Although the sub-heading "Indemnification of and by Trustee" is number as § 14.9, the text of the various sub-provisions state that this Section is "Section 13.9."  Like the parties, the Court assumes that "13.9" is a typographical error, and, therefore, will use "14.9" when referring to the Master Trust's indemnification provisions.

Additionally, the Master Trust provided that each Named Fiduciary other than

GMIMCo would indemnify State Street:

> Subject to the following provisions of this Section [14].9, each Named
> Fiduciary (other than GMIMCo) agrees to defend, indemnify and hold the
> Trustee and GMIMCo harmless from and against all claims, demands,
> damages, taxes and other liabilities which the Trustee and GMIMCo may
> incur to the extent arising from the Named Fiduciary's breach of this
> Agreement, or the negligence, bad faith, recklessness, willful misconduct,
> misfeasance, of the Named Fiduciary, or any of its respective employees,
> but only to the extent such claims, demands, damages, taxes and other
> liabilities do not arise from the negligence, bad faith, recklessness, willful
> misconduct, misfeasance or nonfeasance of the Trustee or any agent
> appointed by the Trustee (which for purposes of this paragraph only shall
> not include any non-domestic depositories except as otherwise provided in
> paragraphs (d) and (e) below), or any of their respective employees or
> agents.

Master Trust, § 14.9(b).

The Master Trust also provided a specific mechanism for the Trust Fund to

reimburse expenses incurred by State Street in connection with the Master Trust:

> The Trustee shall be entitled to reimbursement for reasonable and proper
> counsel fees incurred by the Trustee (whether or not incurred in connection
> with an administrative or judicial proceeding), to the extent permitted by the
> Plans and ERISA, subject to the prior approval of GMIMCo. After approval
> by GMIMCo, such compensation, fees and expenses shall be withdrawn by
> the Trustee out of the Trust Fund if they are not otherwise paid by
> GMIMCo.  No counsel fees of the Trustee or expenses of administration
> shall be borne by either the Trust Fund or GMIMCo to the extent the are
> incurred with regard to any actions or omissions of the Trustee which
> constitute a breach of its duties or responsibilities under this Agreement.

Master Trust, § 14.6(b).

Finally, Section 14.9(g) specifically provided that each party, including State

Street could sue to enforce the reimbursement and indemnifications provisions of the

5

Master Trust:

> Each of GMIMCo, GMTC, each Named Fiduciary and the Trustee may
> bring action against each other to contribute to the satisfaction of any
> liability under Section [14.]9 to the extent that such liability is attributable
> to the culpable conduct of such person.  In the event that an indemnified
> party reasonably concludes that it has a conflict of interest with the
> indemnifying party, or any other party seeking indemnity under this Article
> with respect to the same matter, the indemnified party shall be entitled to
> retain separate counsel reasonably acceptable to the indemnifying party at
> the indemnifying party's reasonable expense.

Master Trust § 14.9(g).

State Street argued in its Objections that the Bar Order proposed by the Settling

Parties on August 31, 2007 would wipe out these indemnification commitments.

On October 9, 2007, the Court held a status conference and ordered Plaintiffs to

respond to State Street's Objections.  Negotiations ensued between Plaintiffs' counsel and

State Street.  Thereafter, on November 1, 2007, Plaintiffs filed an Amended Stipulation to

resolve State Street's objections.  In the Amended Stipulation, Plaintiffs added the

following provision:

> In addition, until the Delphi ERISA action has been concluded and fully
> and finally resolved with respect to State Street, there shall be reserved
> from the Net Settlement Fund the sum of $5,000,000 and if State Street is
> not adjudicated to be liable in the Delphi ERISA action, State Street shall be
> entitled to reimbursement from such reserve for its costs in connection with
> the defense of this action, including its reasonable attorneys' fees and
> related expenses, payable at the time final judgment is entered in State
> Street's favor on the remaining claims, to the extent that State Street would
> have been entitled to assert a claim for contractual indemnity with respect to
> such costs against one or more Released Parties but for the operation of the
> Bar Order.

Amended Stipulation, Dkt. # 260, ¶ 23.

Substantially same language was inserted into Paragraph 17 of the modified

proposed Order and Final Judgment submitted to the Court for consideration and entry.

*See* Dkt. # 260-4, ¶ 17.[3]

On November 2, 2007, Plaintiffs moved for final approval of the settlement.  The

Motion for Final Approval of Partial Settlement requested that the Court approve the

Amended Stipulation containing the $5,000,000 reserve for State Street's defense costs

and enter an order consistent with the proposed Order and Final Judgment which also

contained the $5,000,000 reserve.  *See* Dkt. # 318.

After the Fairness Hearing, the Court granted Plaintiffs' Motion for Final Approval

and on January 23, 2008, entered the Order and Final Judgment, which included the

$5,000,000 reserve provision for State Street's defense costs as set forth in the Amended

Stipulation and Plaintiffs' proposed modified Order and Final Judgment.  *See* Dkt. # 331.

---

[3] Paragraph 17 of the proposed Order and Judgment provided:

In addition, until the Delphi ERISA action has been concluded and fully
and finally resolved with respect to State Street Bank and Trust Company
("State Street"), there shall be reserved from the Net Settlement Fund the
sum of $5,000,000 and if State Street is not adjudicated to be liable in this
Action, State Street shall be entitled to reimbursement from such reserve for
its costs in connection with the defense of this action, including its
reasonable attorneys' fees and related expenses, payable at the time final
judgment is entered in State Street's favor on the remaining claims, to the
extent that State Street would have been entitled to assert a claim for
contractual indemnity with respect to such costs against one or more
Released Parties but for the provisions of Paragraph 14 hereof barring the
assertion of Barred Claims against Released Parties.

7

Upon final approval of the settlement with the Settling Defendants, Plaintiffs proceeded with their claims against State Street.  The Court granted Plaintiffs' motion for leave to file an Amended Complaint for the limited purpose of adding allegations concerning whether State Street acted as an investment manager of the Delphi Common Stock Fund.  The Court then allowed Plaintiffs to take discovery into State Street's alleged role as an investment manager and whether State Street possessed any non-public information from August through October 2005 that may have affected the valuation of Delphi's Common Stock Fund.  *See* 10/26/07 Scheduling Order II [Dkt. #. 240.]  After the close of discovery, on May 9, 2008, Plaintiffs and State Street cross-moved for partial summary judgment and summary judgment, respectively.  On March 18, 2009, the Court entered an Opinion and Order and Final Judgment granting State Street's motion for Summary Judgment and denying Plaintiffs' Motion for Partial Summary Judgment, and dismissed all of Plaintiffs' claims against State Street, with prejudice.  *See In re Delphi Securities, Derivative and "ERISA" Litigation*, 602 F. Supp. 2d 810 (E.D. Mich. 2009). Plaintiffs did not file a Notice of Appeal and the time for appealing expired on April 17, 2009.

On June 8, 2009, State Street filed the instant "Motion for Reimbursement of Defense Costs from the Net Settlement Fund," seeking reimbursement of $2,369,773.12 for costs incurred in defending this action pursuant to Paragraph 17 of the Order and Final Judgment.  These costs consist of attorneys fees and expenses in the amount of $1,846,118.21; expert witness and consultant fees in the amount of $462,597.67;

8

electronic discovery vendor fees in the amount of $20,343.60 and other miscellaneous defense costs in the total amount of $40,713.64. See Declaration of William J. Connolly III and Exhibit 1 attached thereto.

Plaintiffs oppose State Street's Motion. They argue (1) that the motion should be denied because it is untimely under Fed. R. Civ. P. 54(d)(2) and Eastern District of Michigan Local Rule 54.1.2; and (2) that even if the motion was timely made, it should be denied on the merits because State Street would not have been entitled to assert a claim for contractual indemnity with respect to defense costs it incurred under the Trust Agreement indemnity provisions relied upon and, therefore, it is not entitled to reimbursement under the provisions of Paragraph 23 of the Amended Stipulation and Paragraph 17 of the Order and Final Judgment.[4]

## III.  DISCUSSION

### A.    FED. R. CIV. P. 54(d)(2) DOES NOT APPLY TO STATE STREET'S MOTION

Plaintiffs first argue that State Street's Motion for Reimbursement of Defense Costs should be denied because it was not filed within the time limits provided in Fed. R. Civ. P. 54(d)(2) and Eastern District of Michigan Local Rule 54.1.2.

Fed. R. Civ. P. 54(d)(2) provides:

(2)    *Attorney's Fees*.

(A) *Claim to Be Made by Motion*.  A claim for attorney's fees and related nontaxable expenses must be made by motion

---

[4]  Plaintiffs make no argument objecting to the dollar amount of costs requested.

9

unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of Motion*. **Unless a statute or a court rule provides otherwise, the motion must**:

(i) **be filed no later than 14 days after the entry of judgment;**

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2) (emphasis added).[5]

Pursuant to Local Rule 54.1.2, the Eastern District of Michigan has modified the

14 day time limit, requiring that

(a) A motion for attorneys' fees and related nontaxable expenses pursuant to Fed. R Civ. P. 54(d)(2) must be filed **no later than 28 days after entry of judgment.**

L.R. 54.1.2(a) (emphasis added).

The Sixth Circuit and district courts within this Circuit have held that unless the

applicant can establish excusable neglect under Fed. R. Civ. P. 6(b)(1)(B), an untimely

motion for fees should be denied. In *Horne v. City of Hamilton*, 181 F.3d 101, 1999 WL

---

[5] The provisions of subsection (d)(2) were unaffected by the 2009 amendments to Rule 54, which took effect December 1, 2009.

10

313902 (6th Cir. 1999), the defendants filed a motion for fees six weeks after the deadline

set forth in Rule 54(d)(2) had expired.  Believing it had discretion to consider the

untimely motion, the district court entertained the fee application and awarded fees.  The

Sixth Circuit reversed, explaining:

> Under the 1993 amendment to Rule 54(d), a motion for attorney's fees must
> be filed and served no later than fourteen days after entry of judgment
> unless otherwise provided by statute or court order. . . .
>
> No reason exists to excuse the defendants' failure to move for attorney's
> fees within fourteen days of the judgment.  *See* Fed. R. Civ. P. 6(b).  First,
> the defendants did not move for an extension of time to file the § 1988
> motion and the district court's order awarding attorney's fees does not
> constitute a tacit grant of an extension of time.  Second, the defendants'
> failure to file a timely motion was not the result of excusable neglect. . . .
> One purpose of the 1993 amendment to Rule 54(d) was "to assure the
> opposing party is informed of the claim before the time for appeal has
> elapsed." Fed. R. Civ. P. 54 advisory committee's note.  The defendants
> did not file their motion until after the time for appeal had elapsed.  Thus,
> the Hornes were prejudiced by the length of delay. . . .

1999 WL 313902 at *1-2.

In *Allen v. Murph*, 194 F.3d 722 (6th Cir. 1999), the court reiterated what it had

said earlier in *Horne*:

> Rule 54(d)(2), Fed. R. Civ. P., requires that an application for attorney fees
> and non-taxable costs be filed within 14 days of the entry of judgment.  The
> Murphs did not meet this requirement.  Neither did they request an
> enlargement of time within the 14-day period.  Under these circumstances,
> the district court could permit a late filing only if the delay was the result of
> "excusable neglect."  Rule 6(b)(2), Fed. R. Civ. P.

194 F.3d at 723-24.  *See also Ford Dealer Computer Services, Inc. v. Highland Lincoln*

*Mercury*, 2008 WL 2795857 at *1 (E.D. Mich. 2008) (denying fee petition because

11

"Petitioner did not file its motion for attorney fees until May 13, 2008. . ., which exceeds the 28 day time limit [of L.R. 54.1.2]."); *EEOC v. Rocket Enterprises, Inc.*, 2008 WL 2218266 at *1(E.D. Mich. 2008) (same).

Plaintiffs here argue that under the foregoing authorities, because State Street filed its motion six weeks after the expiration of the deadline set forth in Fed. R. Civ. P. 54(d)(2), as modified by L.R. 54.1.2(a), and because no assertion or showing of "excusable neglect" has been made, the motion should be denied. Plaintiffs are mistaken.

As the Sixth Circuit held in *Bruce Clarke & Good Earth Recycling, Inc. v. Mindis Metals, Inc.*, 99 F.3d 1138, 1996 WL 616677 (6th. Cir. 1996), Rule 54(d)(2) "do[es] not apply when the attorney's fees are recoverable under the substantive law governing the action, **for instance whenever an attorney's fee provision is contained in a contract and not a statute."** 1996 WL 616677 at *7(emphasis added). This distinction was, in fact, noted by the Advisory Committee in its comments on the 1993 amendment to Rule 54 which added subsection (d)(2):

> **Paragraph (2).** This new paragraph establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as "costs." It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under governing law incident to the award of fees. *Cf., West Virginia Univ. Hosp. v. Case*, 499 U.S. 83 (1991), holding prior to the Civil Rights Act of 1991, that expert witness fees were not recoverable under 42 U.S.C. § 1988. As noted in subparagraph (A), **it does not apply to fees recoverable as an element of damages, as when sought under the terms of a contract**; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury. Nor, as provided in subparagraph (E), does it apply to awards of fees as sanctions authorized or mandated under these rules or under 28 U.S.C. § 1927.

12

Fed. R. Civ. P. 54, Advisory Committee Notes on the 1993 Amendments (emphasis added).

The cases cited by Plaintiffs are all distinguishable from this case as they all involve requests for fees based on a statute (e.g., *Horne v. City of Hamilton, supra*, 1999 WL 313902  (request based upon statutory provision, 42 U.S.C.  1988(b), for awarding fees to "prevailing party" in civil rights action)) except for one, *Ford Dealer Computer Services, Inc. v. Highland Lincoln Mercury, supra*, 2008 WL 2795857, where the fee request was based upon a court order confirming an arbitration award that explicitly required that the plaintiff submit its request for attorneys, fees and expenses "in accordance with E.D. Mich. L.R. 54.1 and 54.1.2," and one based upon a mediation rule awarding fees after a party rejects a mediation award and then obtains a less favorable outcome at trial.

In this case, as in *Clarke, supra*, State Street's contractual indemnification rights and the Amended Stipulation itself are the "substantive law" providing the basis for State Street's motion.  As such, Rule 54(d)(2) is inapplicable.

 The Amended Stipulation provided that State Street was not entitled to seek reimbursement of defense costs from the settlement fund until "the Delphi ERISA Action has been concluded and fully and finally resolved with respect to State Street."  The Amended Stipulation expressly defined "final" to mean "(a) if no appeal is filed, the expiration date of the time provided for under the corresponding rules of the applicable court or legislation for filing or noticing of any appeal from the Judgment[.]"  Amended

13

Stipulation, p. 10.  Thus, pursuant to the Stipulation, it was not until an appeal was filed by Plaintiffs or until the time for filing a notice of appeal expired that State Street could seek reimbursement of costs.  As in *Clarke, supra*, State Street filed its motion for reimbursement of defense costs in this case within a reasonable time from when it was first entitled to reimbursement, i.e., within six weeks after the time period for appeal by the Plaintiffs expired.

For all of the foregoing reasons, the Court finds no merit in Plaintiffs' untimeliness argument.

B.   PLAINTIFFS ARE PRECLUDED FROM RE-LITIGATING STATE STREET'S "TRUSTEE" STATUS

Plaintiffs also claim that State Street has no right to seek indemnity under the Master Trust Agreement because Plaintiffs based their claims against State Street on its position as Investment Manager not as Trustee under the Master Trust.  Plaintiffs have already made this argument in opposing State Street's summary judgment motion and lost, and under the "law of the case" doctrine, they are precluded from relitigating this issue now.

The "law of the case," like issue preclusion, or collateral estoppel, prevents the relitigation of an issue once there has been a judgment on the merits.  Collateral estoppel forecloses relitigation of a previously-decided issue in any subsequent suit.  The doctrine of the law of the case is similar in that it limits relitigation of an issue once it has been decided, but the law of the case doctrine is concerned with the extent to which the law

14

applied in decisions at various stages of the same litigation becomes the governing principle in later stages. *Bowles v. Russell*, 432 F.3d 668, 686-77 (6th Cir. 2005) (citing 18 Moore's Federal Practice, § 134.20 (Matthew Bender 3d ed.)). "The law of the case doctrine generally discourages courts from reconsidering determinations that the court made in an earlier stage of the proceedings." *United States v. Graham*, 327 F.3d 460, 464 (6th Cir.2003). Further, the doctrine applies only to issues that have been decided explicitly (or by necessary implication) by a court. *Id.* A court need not have elucidated or explained its decision, but it must have been "decided upon a rule of law." *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166 (1988); *Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783 (1994) (applying preclusive effect where issue was "determined by a valid and final judgment").

The law of the case doctrine, however, is discretionary when applied to a coordinate court or the same court's own decisions. *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir.1998) (citing *United States v. Todd*, 920 F.2d 399, 403 (6th Cir.1990)); *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677-78 (6th Cir.2002) (doctrine is discretionary when a court reviews its prior erroneous decision); *Perillo v. Johnson*, 205 F.3d 775, 780-81 (5th Cir.2000) (doctrine is a matter of judicial discretion rather than judicial power when a court is reviewing its own prior decision).

"[L]aw of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Bowles*

15

*v. Russell, supra,* 432 F.3d at 686-77 (quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739 (1912)). Nevertheless, a court's power to reach a result inconsistent with a prior decision reached in the same case is "to be exercised very sparingly, and only under extraordinary conditions." *Gen. Am. Life Ins. Co. v. Anderson*, 156 F.2d 615, 619 (6th Cir.1946); *In re Kenneth Allen Knight Trust*, *supra*, 303 F.3d at 677. To differ, the court "must find some cogent reason to show the prior ruling is no longer applicable," such as if its prior opinion was a "clearly erroneous decision which would work a manifest injustice." *Bowles, supra*, 432 F.3d at 677 (6th Cir. 2005) (quoting *In re Petition of United States Steel Corp.*, 479 F.2d 489, 494 (6th Cir.1973).

In its March 18, 2009 Opinion and Order granting State Street's Motion for Summary Judgment, the Court held that State Street was a "directed trustee" under the Master Trust Agreement.  In so doing, the Court rejected Plaintiffs' argument that State Street was not a "trustee" but an "investment manager" whose rights and responsibilities with respect to the Delphi Funds were governed by the Investment Management Agreement ("IMA") that State Street had entered into with GMIMCo.  The Court explicitly found that under the express terms of the IMA, State Street's authority under the IMA with respect to the Delphi Funds was "subject to the Trust Agreement and the Fund Policy." This holding forecloses Plaintiffs' argument that State Street should be deemed to be an "investment manager" and, therefore, has no right to seek indemnification pursuant to that Agreement as a trustee.

The Master Trust provided that GMIMCo would indemnify State Street for all

16

claims arising out of certain wrongful conduct by GMIMCo **and** also all claims about

State Street having acted in accordance with directions from GMIMCo:

> **GMIMCo agrees to defend, indemnify, and hold the Trustee harmless from and against all claims, demands, damages, taxes and other liabilities which the trustee may incur to the extent arising from** GMIMCo's breach of this Agreement, **or the negligence, bad faith, recklessness, willful misconduct or nonfeasance of GMIMCo.** Subject to the following provisions of this Section [14].9, **GMIMCo agrees to defend, indemnify and hold each Trustee harmless from and against all claims, demands, damages, taxes and other liabilities which the Trustee may incur as a result of** *any act or omission in accordance with direction of GMIMCo* or any Investment Manager, but only to the extent such claims, demands, damages, taxes and other liabilities do not arise from the negligence, bad faith, recklessness, willful misconduct, misfeasance or nonfeasance of the Trustee or any agent appointed by the Trustee (which for purposes of this paragraph only shall not include any non-domestic depositories, except as otherwise provided in paragraphs (d) and (e) below), or any of their respective employees or agents.

Master Trust, § 14.9(a) (emphasis added).

Plaintiffs argue that State Street cannot show that the action for which it was sued

in this case -- delaying the decision to sell Delphi stock until October 5, 2005 -- was "in

accordance with a direction from GMIMCo or an Investment Manager." Plaintiffs are

mistaken. The "direction" of GMIMCo was set forth in the Investment Management

Agreement entered into between GMIMCo and State Street -- the very agreement that

Plaintiffs rely upon here --   State Street was explicitly instructed by GMIMCo in the

IMA to manage and invest the Company Stock  Funds "subject to the Trust Agreement

and the written Fund Policy" for each investment account.  *See* IMA, §§ 3, 4.  As the

Court found in granting State Street's Motion for Summary Judgment, the Master Trust

17

Agreement delineated that State Street was to determine the mix of company stock and short-term instruments in the fund based only on its estimates of the cash flow requirements of the fund.  *See* Master Trust § 4.1.  The Fund Policy similarly required State Street only to maximize investment in Delphi stock and maintain and manage an appropriate level of liquidity to process loans and transfers.  *See* Summary Judgment Stip., Ex. 12.

Based upon the foregoing, the Court finds that State Street is entitled to seek indemnity for liabilities in incurred as a result of an act or omission in accordance with directions from GMIMCo as provided in Section 14.9(a) of the Master Trust.

The Master Trust also provided that named fiduciaries other than GMIMCo would indemnify State Street:

> Subject to the following provisions of this Section [14].9, **each Named Fiduciary (other than GMIMCo) agrees to defend, indemnify and hold the Trustee and GMIMCo harmless from and against all claims, demands, damages, taxes and other liabilities which the Trustee and GMIMCo may incur to the extent arising from the Named Fiduciary's breach of this Agreement, or the negligence, bad faith, recklessness, willful misconduct, misfeasance, of the Named Fiduciary, or any of its respective employees**, but only to the extent such claims, demands, damages, taxes and other liabilities do not arise from the negligence, bad faith, recklessness, willful misconduct, misfeasance or nonfeasance of the Trustee or any agent appointed by the Trustee (which for purposes of this paragraph only shall not include any non-domestic depositories except as otherwise provided in paragraphs (d) and (e) below), or any of their respective employees or agents.

Master Trust, § 14.9(b).

The Executive Committee of the Board of Directors of Delphi Corporation is a

18

Named Fiduciary under the Master Trust.  *See* Master Trust, p. 1.  Like GMIMCo, the

Executive Committee members were named Defendants in the ERISA Plaintiffs'

Amended Consolidated Class Action Complaint [*see* Dkt. # 245, ¶¶ 24-25], and, like

GMIMCo, are Released Parties under the Amended Stipulation and Agreement of

Settlement of the ERISA action.  [*See* Amended Stipulation, Dkt. # 260, ¶ 1(jj), (ll).]

In sum, the Court finds that but for the Bar Order, State Street, having prevailed on

the merits, would have been entitled to assert a claim for indemnification against

GMIMCo and/or the Executive Committee and/or its members as provided in §§ 14.9(a)

and (b) of the Master Trust.  Therefore, the Court concludes that, pursuant to Paragraph

23 of the Amended Stipulation and Agreement of Settlement With Certain Defendants

[Dkt. # 260] and Paragraph 17 of the Order and Final Judgment entered by the Court on

January 23, 2008 [Dkt. # 331], State Street is entitled to reimbursement for its costs,

reasonable attorneys' fees and related expenses incurred in connection with the defense of

this matter.

State Street has submitted the verified affidavit of William J. Connolly, State

Street's Vice President and Senior Litigation Counsel, showing that State Street has

incurred $1,846,118.21 in attorneys' fees and expenses, and $523,654.91 in

expert/consultant fees and other costs.  Although Mr. Connolly attached to his affidavit a

summary of the monthly amounts of attorneys' fees billed by State Street's attorneys,

McDermott, Will & Emory, and its local counsel, Pepper Hamilton, these amounts are not

itemized to show which attorneys from the firms performed work, the specific work each

19

attorney performed, the number of hours expended, and their hourly rates. Without this information, the Court is unable to determine whether the $1,846,118.21 requested by State Street for attorneys' fees is a reasonable sum. Therefore, the Court will await the submission of counsel of a verified, itemized affidavit as set forth above before entering a monetary award.

<u>CONCLUSION</u>

For all of the foregoing reasons,

IT IS HEREBY ORDERED that State Street Bank and Trust Company's Motion for Reimbursement of Defense Costs from Net Settlement Fund **[Dkt. # 437]** is GRANTED as to the issue of State Street's entitlement to reimbursement of its reasonable attorneys' fees, costs, expert witness fees and related expenses pursuant to Paragraph 23 of the Amended Stipulation and Agreement of Settlement With Certain Defendants and Paragraph 17 of the Order and Final Judgment entered by the Court on January 23, 2008.

IT IS FURTHER ORDERED that within 14 days of the date of this Order, State Street shall submit to the Court a verified and itemized affidavit of its counsel detailing the amounts of attorneys' fees incurred in connection with this matter in the manner set forth above in this Opinion. The Court will enter a monetary award after reviewing State Street's submission.

SO ORDERED.

s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated: January 29, 2010

20

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 30, 2010, by electronic and/or ordinary mail.

s/Ruth Brissaud
Case Manager