UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: DELPHI CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION, | MDL No. 1725 |
| | Master Case No. 05-md-1725 Hon. Gerald E. Rosen |
| | This Document Relates to: 05-70882; 05-70940; 05-71030; 05-71200; 05-71249; 05-71291; 05-71339; 05-71396; 05-71397; 05-71398; 05-71437; 05-71508; 05-71620; 05-71897; 05-72198 |
| _____/ | |

MEMORANDUM OPINION AND ORDER
AWARDING STATE STREET BANK DEFENSE COSTS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      May 11, 2010

PRESENT:  Honorable Gerald E. Rosen
          United States District Chief Judge

I. INTRODUCTION

On January 29, 2010, the Court entered an Opinion and Order granting Defendant State Street Bank and Trust Company's Motion for Reimbursement of Defense Costs as to the issue of State Street's entitlement to reimbursement of its reasonable attorneys' fees, costs, expert witness fees, and related expenses pursuant to Paragraph 23 of the Amended Stipulation and Agreement of Settlement With Certain Defendants and Paragraph 17 of the Order and Final Judgment entered by the Court on January 23, 2008.

1

The Court, however, withheld entering a monetary award at that time finding that State Street had not sufficiently itemized the amounts of attorneys' fees billed by its attorneys to enable the Court to determine the reasonableness of the requested amount. Therefore, the Court directed State Street to submit a verified and itemized affidavit showing which attorneys from the McDermott, Will & Emory and the Pepper, Hamilton law firms performed work on this matter, the specific work each attorney performed, the number of hours expended, and their hourly rates.

On February 12, 2010, State Street submitted for *in camera* review, a set of verified affidavits regarding the attorneys' fees requested, however this submission only summarized the various attorneys' work; it did not itemize or detail the specific work performed by each attorney, the hours billed by each such attorney for each such specifically detailed task, and the hourly rates at which each such attorney billed for such work. Therefore, on February 26, 2010, the Court ordered State Street to provide the Court with this additional information.

In response to the February 26 Order, on March 12, 2010, State Street submitted to the Court for *in camera* review, a 4-inch thick binder of billing reports of its attorneys' work on this case from February 28, 2006 through April 30, 2009. The Court has had the opportunity to complete its review of State Street's submissions and is now prepared to enter a monetary award. This Memorandum Opinion and Order sets forth the Court's decision.

## II. DISCUSSION

State Street seeks reimbursement from the Settlement Fund[1] of a total of $2,369,773.12 for defense costs incurred in this matter. This amount includes $1,846,118.21 in attorneys' fees and expenses billed by State Street's attorneys McDermott, Will & Emery, LLP ("McDermott"), and its local counsel Pepper Hamilton, LLP ("Pepper Hamilton"); $490,216.66 in expert witness and consultant fees; $13,094.65 court reporting fees; and $20,343.60 electronic discovery fees. *See* Declaration of William J. Connolly III ¶¶ 2-3.

### ATTORNEYS' FEES

McDermott, Will & Emery billed State Street for 3,494.76 hours of attorney and paralegal time, and Pepper Hamilton billed the Bank for an additional 140.75 hours. For this attorney time, McDermott invoiced State Street $1,694,263.41 and Pepper Hamilton invoiced the Bank for $45,603.75.

The primary concern in any attorney fee case is that the fee awarded be reasonable. *See Blum v. Stenson*, 465 U.S. 886, 893, 104 S.Ct. 1541, 1545 (1984). The reasonableness of the fee request here is particularly important as the provision upon which State Street bases its fee request expressly calls for reimbursement from the Net

---

[1] The Order and Final Judgment entered by the Court on January 23, 2008 provided that $5,000,000 would be reserved from the Net Settlement Fund, and further provided that upon being adjudicated not liable in this action, State Street would be entitled to reimbursement from this reserve for its defense costs, including its reasonable attorneys' fees and related expenses. *See* 1/23/08 Order and Final Judgment, ¶ 17 [Dkt. # 331].

Settlement Fund of only its "*reasonable* attorneys' fees and related expenses." *See* Amended Stipulation, Dkt. # 260, ¶ 23; Order and Final Judgment, Dkt. # 331, ¶ 17. Therefore, it is incumbent on the Court to assure itself that the fees for which reimbursement is sought are reasonable.

The most useful starting point for determining the amount of a reasonable fee, of course, is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983). The Court does not take issue with the number of hours expended by State Street's attorneys given the complexity of the issues presented in this case. However, the Court is concerned about some of the hourly rates. More than half of the 3,494.76 hours billed by McDermott, Will & Emery were billed by four lawyers -- William Boies, Alan Hawksley, Nancy Ross and Steven Kasten -- and, even with the 10% reduction given to State Street,[2] all four of these attorneys billed at hourly rates higher than $550.00 per hour.[3]

---

[2] A ten percent reduction was deducted from the total fees billed to State Street each month.

[3] William Boies billed 56.5 hours at $625/hr; 295 hours at $670/hr and 496 hours at $740/hr. Alan Hawksley billed 81.25 hours at $625/hr; 8.75 hours at 685/hr and 13.5 hours at $735/hr. Nancy Ross billed 32 hours at 600/hr; 48 hours at $655/hr and 215.5 hours at $715/hr. Steven Kasten billed 38.75 hours at $550/hr; 235 hours at $590/hr and 333.75 hours at $640/hr. (These billing rates reflect the attorneys' unreduced hourly rates.)

It is well-established that "a district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Sebring*, 36 F.3d 517, 533 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995). In exercising its discretion, it is appropriate for a court to apply local market rates. *Id. See also, Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) ("A trial court in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'"); *National Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir.1988) ("The community in which the court sits is the appropriate starting point for selecting the proper rate.") Thus, "a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should go compensated at the lower rate." *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997), *abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) (quoting *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986)). *See also Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768-69 (7th Cir. 1982), *cert. denied*, 461 U.S. 956 (1983) (judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel is available locally at a lower charge or rate).

"The community market rule has the principle virtue of being the easiest way to cope with the 'inherently problematic' task of ascertaining a reasonable fee [for an out-of-town attorney] in a situation where 'wide variations in skill and reputation render the

usual laws of supply and demand largely inapplicable. . . .'" *Haddix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (quoting *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). As the Sixth Circuit explained in *Haddix*, determining the ordinary fee for similar work in the community does not, however, mean that courts must go through the lengthy calculus of ascertaining the range of rates that private law firms charge locally. 65 F.3d at 536. When local counsel of similar reputation and experience to that of the out-of-town counsel is involved, it is appropriate for a court to assume that the fees charged by local counsel reflect the ordinary market rate, and such fees are presumptively reasonable. *Id. See also*, *American Fed'n of Gov't Employees, AFL-CIO Local 3882 v. Federal Labor Relations Authority*, 944 F.2d 922, 937 (D.C. Cir. 1991) (a reasonable fee equates to a market-rate fee).

Here, Pepper Hamilton attorneys Richard Rossman, James VandeWyngearde, Abraham Singer and Matthew Lund acted as local counsel for State Street. These Pepper Hamilton attorneys are of similar skill, experience, and reputation to the attorneys of McDermott, Will & Emery. The rates at which the Pepper Hamilton attorneys billed were periodically adjusted upward, (as were the rates at which the McDermott attorneys billed), presumably in response to changes in the local market.

Mr. Rossman was involved in the case in 2006 and 2007. His billing rate in 2006 was $470 per hour and his 2007 rate was $490 per hour. Mr. VandeWyngearde, who worked on this matter throughout the course of this action, billed at $260 per hour in

2006; $285 per hour in 2007; $330 per hour in 2008; and $355 in 2009. Messrs. Singer and Lund only worked on the case in 2009 and their billing rates were $455 and $420 per hour, respectively. The billing rates of the Pepper Hamilton attorneys are commensurate with the billing rates of other large Detroit area firms. "[T]he court is entitled to rely upon its own knowledge of attorney's fees in its surrounding area in arriving at a reasonable fee . . . ." *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1190 (1st Cir.1996).

Based upon the foregoing, the Court concludes that for purposes of this action, the billing rates of the McDermott, Will & Emery attorneys should be capped at $550.00 per hour. This results in a reduction of the billing rates of only four attorneys, amounting to a total reduction of $138,985.00 of the amount requested, which is approximately a 7.8% reduction of the total fee request. This reduction is not intended as a criticism of the quality of the work of State Street's counsel in this case which, in fact, was quite professional and of very high caliber, or of the result counsel achieved. The question is whether the Court believes that the plaintiffs should be taxed with the costs of that work when viewed in the context of the whole case.

In this case, the ERISA Gross Settlement Fund is now only $22,882,774.00 as a result of the loss of the $25.5 million equity interest in the Delphi bankruptcy that was provided in the original settlement agreement.[4] Deductions will be taken from this gross

---

[4] It was at the time when the original gross settlement fund consisted of both $22.5 million cash and $25.5 million allowed equity interest that the Plaintiffs agreed to

sum for taxes, accounting fees, administrative fees, and Lead Plaintiffs' counsel's attorneys' fees and costs. Notices of the class settlement were sent out to 45,000 potential class members. It is evident that the shares of the net settlement fund that the plaintiff class members will ultimately receive will not be very large. Under these circumstances, the interests of justice compel the Court to preserve as much of the fund as possible for the benefit of the class members.

For these reasons the Court will reduce the total amount of attorneys fees requested by State Street by $138,985.00 and award State Street fees in the total sum of $1,739,867.16 ($1,555,278.41 for the fees of McDermott, Will & Emery and $45,603.75 for the fees of Pepper Hamilton).

COSTS AND OTHER LITIGATION EXPENSES

The Court has also reviewed State Street's submissions regarding the amounts requested by State Street for expert witness and consultant fees and the amounts requested for court reporting and electronic discovery costs. The Court finds that, under the circumstances, these were necessary expenditures and finds that the amounts requested are reasonable. Therefore, the Court will award State Street the full $523,654.91 it requested for these expenditures.

The Court is also satisfied that the amounts billed by State Street's attorneys for

---

the reserve of $5 million for the potential reimbursement of State Street's reasonable fees and costs.

various litigation costs and expenses[5] to be reasonable. Therefore, the Court will award State Street $102,218.77 for the costs billed by McDermott, Will & Emery, and the $4,032.28 costs billed by Pepper Hamilton.[6]

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that State Street be reimbursed from the Net Settlement Fund the total sum of $2,230,788.12 for the costs and attorneys' fees incurred in connection with its defense of this action.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: May 11, 2010

---

[5] These costs and expenses include amounts expended for photocopying, binding, messengers/couriers, postage, express mail, facsimile transmissions, telecommunications, electronic research transportation, parking, meals and other travel expenses.

[6] In the Declaration of William J. Connolly these costs and expenses are not segregated from the amounts sought by State Street for attorneys' fees. That Declaration states only that McDermott, Will & Emery invoiced State Street for $1,796,482.18 and that Pepper Hamilton invoiced the Bank for $49,636.03, and that State Street paid these invoices "in the ordinary course." Connolly Decl., ¶ 3. A review of the billing reports submitted on March 12, 2010 for *in camera* review shows that these sums include both attorneys' fees and costs. The monthly billings do, however, segregate these costs from the attorneys' fees. The amount of costs, therefore, has been calculated using these monthly billing records.

9

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 11, 2010, by electronic and/or ordinary mail.

                s/Ruth A. Gunther
                Case Manager